The final case on the call this morning is number 121995, Bank of New York Mellon v. Pacific Royalty and others. Agenda number seven. Counsel, are you ready? You may proceed. Good morning, Justices. Holden Townsend. I make this report to punish rapes on behalf of the defendant, and to appellate Pacific Royalty Group, LLC. There are two issues for review this morning. The first is whether the defendant timely filed his motion to quash. The second is whether a limited liability company may be served by publication. As to the first issue, this Court should reverse the decision of the Third District Appellate Court and find that the defendant timely filed his motion to quash within the parameters of Section 15-1505.6 of the Illinois Mortgage Proposal Law, when the initial appearance was filed on the same day that the case was dismissed by the London prosecution, and also where the defendant filed his motion to quash within 60 days of the case being reinstated. As to the second issue, we would ask that the Court meet behind you that a limited liability company may not be served by publication where there is no statute or specific section of the Code of Civil Procedure that provides for such service on a limited liability company. As to the first issue regarding whether the defendant's motion was timely filed, the Illinois Mortgage Proposal Law, specifically 15-1505.6, sets certain guidelines or deadlines within which a defendant in a residential mortgage proposal law may bring a motion to quash service of process. The statute specifically provides that at 60 days after the earlier of either the date that the defendant filed his appearance or the date that the defendant appears at a hearing without filing an appearance. Now the issue in this case is that the defendant filed his appearance back in April 18, 2013, but on that same day the case was dismissed for one prosecution. The case was later reinstated on May 30, 2013. On the 49th day thereafter, the defendant filed its motion to quash. So if we look under the holding of source versus O'Donnell, which holds that once the dismissal for one prosecution is vacated, the status of the case refers to the posture of the case when the DWP was entered. Therefore, when the DWP was vacated on May 30, the case reverted back to April 18, which is when the defendant had filed its initial appearance. Therefore, the defendant had 60 days from May 30 to file his motion to quash, which it did on July 18, 2013. And as cited in our brief on the case versus Healdsburg Cottage Hospital, that case stands for the proposition that the period of time that elapses between when the case is dismissed for one prosecution and when the case is reinstated should not be counted because common sense and basic logic dictates that once there is no pending action, then the defendant, even if he wanted to, could not have filed a motion to quash the process because there was no case within which to do so at that time. Therefore, we find that even if you were to look at the overall span of time, which was also mentioned in the case versus Healdsburg case, which referenced the Muscat and the Aranda decisions, even if you were to look at the overall span of time that it left, you still could not count the time that elapsed when the case was dismissed and when the case was reinstated. You would have to look at the time that elapsed from the day the defendant filed his appearance to when the case would have been DWP'd. And the fact of this case is because both things occurred on the same day. The day that the defendant filed his initial appearance is the exact day, the same day, that the case was dismissed for one prosecution. So even if we were to apply that analysis here, that would be of no aid to the plaintiff because there was no span of time prior to the dismissal and the time that the defendant filed his initial appearance. So for all those reasons and all that we decided in the brief of that first issue, we find that the third district heard when it found that the defendant did not timely file its motion to quash, as it was in fact filed within 60 days of the case being reinstated. Turning to the second issue, the second issue is whether a limited liability company may be served by publication. Service of process on a limited liability company... Counsel, we only get to that if we disagree with your first argument. Is that right? Yes, that is correct. Service of process on a limited liability company is governed by the Limited Liability Company Act. Section 1-50 specifically provides that any process, notice, or demand that is required or permitted by law to be served on either a limited liability company or a foreign limited liability company must be served on the registered agent appointed by the limited liability company or the Secretary of State based on certain factors provided further in subsection B. Subsection B goes on to state that the Secretary of State is irrevocably appointed as an agent of the limited liability company and it goes on to list a number of uniterated factors. And subsection 1 under section B is when the limited liability company fails to appoint or maintain a registered agent within the state, which was the exact set of facts that we had in our case. We had a foreign limited liability company who did not have a registered agent within Illinois. And even though there are no cases that are specifically on point, but if you look at the case of Eastland Construction Inc. versus Longwood Towers LLC, that case had to do with the plaintiff had served the former registered agent of the defunct LLC. And the first district in that case held that when any of the conditions of subsection B are present, a plaintiff is required to serve the process of the Secretary of State. And one of the subsection B that the court is referencing in Longwood Towers is this very fact that we have here, and that is for the limited liability company failed to appoint an agent within the state. How do you respond to what will be, I'm sure, the opposing counsel's argument that subsection D opens it up? Yes, Judge. Subsection D provides, basically, a catch-all provision, like nothing, hearing, duty, and child. It prevents service in any other manner. Now, if you look, for example, if you look at the Business Corporation Act, it has the most very similar provision as the Limited Liability Company Act, and it has the exact catch-all provision. And there are cases that have held that a corporation may be served by publication. However, the difference here is of most significance, and that is because you do have a specific section of the Code of Civil Procedure that provides for publication service on a corporation. Section 2-204 specifically provides that a private corporation may also be notified by publication and mailed in like manner and with like effect as individuals. So even though you do have a catch-all provision, but the reason why you're able to serve a corporation with publication is because you do have a specific code section which allows it. And then again, if you also look at the statute, which is 2-205.1, that deals with service on voluntarily unincorporated association. That section of the Code has the exact provision as 2-204, where it specifically provides for service by publication on a voluntarily unincorporated association. So even though you do have that catch-all provision, but you do not have an accompanying or related section of the Code of Civil Procedure that specifically provides that you are able to serve the LLC by publication. And the basic or generally accepted rule of statutory construction is that the express inclusion of a provision in one part of a statute and its omission in a parallel section is an intentional exclusion from the latter. Therefore, if the legislature intended for LLCs to have the same for service of process to be had in limited liability companies as corporations or associations, it could very well have promulgated sections of the Code of Civil Procedure that specifically provides for such service. There is no such section of the Code of Civil Procedure that allows an LLC to be served by publication. And I also know that the plaintiff also makes mention, well, you have 2-206, which provides that you can serve a defendant by publication. However, if you take a closer look at 2-206, it implies that service is meant to govern service of process on individual defendants. And we also, as we're interpreting statutes, we have to be mindful also that if 2-206 was intended to allow service of process on companies or corporations or associations, then there would have been no need for the legislature to have promulgated section 2-204 and 2-205.1, which specifically provides for service of process by publication on a company, on a corporation, and on an association. So it is argued that 2-206, well, while it provides for service by publication, but it was never intended to allow publication service on a limited liability company or a natural individual. And in further support of that, if you also look at 2-204 and 2-205, it does state, when it references service by publication, it says, in like manner and with like effect as individuals. And that goes back to my point, well, yes, you have 2-206, which specifically provides for service of process on individual defendants. And hence, you have a statute, a court section that talks about service of process on unnatural individuals, on a corporation or an association, which specifically provides for service in that manner. And then it does mention that, you know, when you serve by publication, you do it in like manner as you would do individuals, which is provided for by section 2-206 of the court of civil procedure. So given that the Limited Liability Company Act does not have a specific provision, which provides for service of process on a limited liability company by publication, coupled with the fact that there is no related statute that specifically provides that you may serve a limited liability company by publication, then it is our view that the plaintiff, when he served the defendant in this case by publication, that it was improper. And even if you get beyond that to say that publication is allowed and the LLC could have been served by publication, the plaintiff's manner of service in this case was not proper because there was no due diligence or diligent inquiry to ascertain the whereabouts of the defendant. The defendant, the plaintiff, did one search of the telephone directory of the county, they searched the Texas State website, and after those two inquiries, they stated that the registered agent could not have been found.  There are other means, other avenues that the plaintiff could have used to determine where the registered agent was. So even if the court were to find that such service was proper, service should still be deemed ineffective because the plaintiff did not use due diligence to do inquiry to find the whereabouts of the LLC's registered agent for proper service of process. Now, if there are no further questions from the court, I would just reserve any additional time for rebuttal. Seeing no questions, thank you. Thank you, Judge. Mr. Kern. May it please the Court, Counsel, my name is Joseph Kern, and I represent Plaintiff Appelli, the Bank of New York, Maryland. For a defendant to prevail here, it would require the court to ignore canons of statutory construction it has relied on for decades, it would require the court to ignore a statutory filing deadline, it would require the court to read an exception into a statute where none exists, and it would require the court to ignore the catch-all provision of the Limited Liability Act, which allows for service in any manner permitted under Illinois law. Section 15-1505.6 states plainly and unambiguously that a defendant in a mortgage foreclosure case has 60 days to file a motion to quash service. Here, it is undisputed that they did not file a motion to quash service within 60 days. The statute does not include any exceptions to that 60-day filing deadline. If the legislature intended that one, an exception be in that statute, it would have wrote one in that statute. And the canons of statutory construction are clear that where a statute is clear and unambiguous, as is Section 15-1505, the court must apply it as written, construe the plain meaning of it, and not write into it any exceptions. Does it make sense, Mr. Kern, your position is that the time for filing a motion to quash service continues to run while the case is dismissed, right? Yes, Your Honor. And during that time, such a motion can't be filed, and the request of relief can't be granted. In other words, if compliance with the deadline is a legal impossibility, then how can it be said that the time period continues to run? I believe the legislature addressed this exact concern by allowing parties to move for extension in time where there was good cause. And if the case is DWP, I believe that's a good cause to promptly move for extension when the case is reinstated. Or, perhaps, even while it is DWP. DWPs are not final and appealable orders. It is common practice that motions are filed when a case is DWP. For example, in this exact case, plaintiff had to file a motion to vacate the DWP. So I believe the legislature provided a remedy for cases like this where potentially a party does not file within the 60-day deadline when the case is DWP and is then reinstated. That was not done here. Defendant even admitted or acknowledged that the date it filed its appearance in this case, which is the same day that it was DWP, that it appeared that day for the specific purpose of asking the court for an extension of time to file a motion to vacate. So it begs to wonder why it did not do that that day, or why it did not ask that some language be included in the order of DWP in the case that allowed for extending the 60-day deadline should the case be reinstated. The dissenting justice, although this was not raised by Pacific, but it is a public policy statement by the dissenting justice, he basically said if the majority's position is correct, then every foreclosure plaintiff could insulate itself from motion across service by doing exactly what happened here, voluntary dismissing the action as soon as the defendant files its appearance and then waiting more than 60 days to refile. His point was it's not only inequitable, but it cannot be what the legislature intended. How do you address his point there? Well, whether it's what the legislature intended or not, I don't believe you even have to get there, because the plain language of the statute is what it is, 60 days to 60 days under the statute. And to address his concern about the potential inequitable result, first of all, that's not what happened here. This case was reinstated within the 60-day timeframe, meaning that the defendant still could have timely filed a motion to quash upon reinstatement, chose not to do so. Secondly, again, I believe the statute does provide a remedy in that situation. If a case with DWP with the intent or the facade of trying to allow someone to not channel service through a motion to quash, I believe the remedy there would be to promptly file a motion in the trial court asking for an extension of time to file a motion to quash. I believe that would be a good cause. If it was shown that a party intentionally dismissed a case to get around someone's right to channel service, I believe that that would be a good cause. I believe that's what the statute says. I believe that's why the legislature thinks it's a good cause. In situations exactly like the dissent mentioned. And the defendant's position that the 60-day deadline should be told or there should be an exception to it is not supported by any case that has addressed this issue. There are a limited amount of cases. I believe there are two that have addressed this. And in both cases, the appellate courts held that if it's filed beyond 60 days, it's barred by Section 15-1505. And it appears that one of the concerns here and one of the defendants' concerns, which is also the dissenting judge's concern at the appellate court, was the potential harsh or unfair result that could result if someone did try to, I guess, gain the statute, voluntarily dismiss a case, and then not reinstate it until after the 60-day deadline expired. First of all, whether at least a harsh result or not, it should not come into play here. If the statute of limitations is blown and someone doesn't file a claim within the statute of limitations, that is an extremely harsh and inequitable result for the party that can't now bring its claim before the court. But in those situations, the statute of limitations aren't extended. The court can't rewrite the statute because it's unfair and because it potentially can lead to a harsh result. And this isn't a situation where there is any unfairness. This is a case where the defendant basically appeared in a case, sat back, did nothing for 90 days, back when it was reinstated, still waited 49 days before filing any motion in the case. So it's not a harsh result. The defendant could have easily avoided the situation it finds itself in if it either filed a motion to court service within the 60 days or moved to court or filed a motion for extension asking the court to extend that deadline in light of DWP. Neither was done here. And the case decision that the defendant cites a support position that the timeline in between a dismissal and a reinstatement should count. Case is not on point. Case does not involve a mortgage foreclosure case. Case involves a medical malpractice case, and it involves the question of whether a court should consider the total overall amount of time that lapses between filing an initial complaint and serving a defendant when ruling on a motion to dismiss in light of Rule 103B for failure to exercise due diligence in obtaining service. Rule 103 does not set forth any deadline to either move to dismiss or to serve a defendant. Here we have a specific deadline in the statute. So I do not believe case is on point for this specific set of facts. And also, again, there are situations, even applying case, where a deadline may not be extended. For example, there's a statute of limitations issues. If a case is DWP'd or voluntarily dismissed, it doesn't necessarily tell the statute of limitations for any new claims that may be brought or any claims that may be brought in another circumstance. So it's not automatic that because a case is DWP'd or voluntarily dismissed that basically everything should be totaled. In resolving issues, and as the court mentioned, if the court agrees with us on Issue No. 1, which we think it should in that 60 days means 60 days in the statute, there is no tolling and there is no exception, and that's declared in the ambiguous language of the statute, it does not need to get to Issue No. 2 regarding whether the Limited Liability Act permits service and process by publication. But for purposes of completeness, we'll turn to that second issue now. The Limited Liability Act. Just before you do, so your position is during the time after a case is DWP'd that motions are still brought after that time? Without reinstatement of the case? I'm not aware of anything that would have prohibited a party from filing a motion while the case is DWP'd. Well, there's no case pending until it's refiled, right? It's dismissed for want of prosecution. The only motions, maybe I'm wrong, but the only motions in my experience were motions to vacate the DWP or motions to reinstate the case. In my experience, those are the only motions I've seen filed. However, I'm not aware of anything that would have prevented defendants from filing a protective motion while the case is not pending, setting forth the facts that it's DWP'd on this day. And backing up, DWPs are not final appealable orders and parties have an absolute right to reinstate. So based on that, I believe the statute tried to address your concern, which I believe a motion could have been filed while the case was DWP'd. Whether it's common practice or not, I don't know. I don't believe that it is, but I don't know anything that would have prohibited them from doing so. Even under what case number? The case is gone. Unless there's a refiling. That's my question, too. All right. So your opposing counsel realizes the time is clicking in the case of a DWP. She goes to the clerk's office. What's the clerk going to do? She says, I'm going to file this. What is the clerk going to do? Under what number? Is it going in front of a judge? No. What happens? Practically, when you say that it can always be filed, where does it get filed and under what number? In what courtroom? In my experience, for example, when you file a motion to vacate a DWP, it is filed under the same case number as the last case number. That motion is also noticed before the judge for hearing. So based on that, I believe there's no way to definitively know, but I believe the clerk would have filed it, and if the motion was properly noticed, it could have been heard before the court. But even beyond that, again, when the case was reinstated, there was 49 days within which they could have still filed the motion to quash, timely under Section 15-1505, and they did not. So turning to the second issue as to whether the Illinois Limited Liability Act permits the service to be processed by publication, the defendant's position is that subsections A and B of that statute, of that act, do not. However, obviously the act must be read in totality, and as the court brought up to defendants' counsel, subsection D of the Illinois Limited Liability Act specifically states that nothing herein contained shall limit or affect the right to assert any process upon a limited liability company in any other manner, now or hereafter permitted by law. The Illinois Limited Liability Act was enacted in 1994. That original language was in that act. It was amended in 2013. That language was not removed. It's still in the statute. And after you find the clear and unambiguous language of subsection D, it's clear that the act did not mean to restrict the only method of service on LLCs by serving a registered agent or the Illinois Secretary of State. That's what it intended. It would have not added subsection D in there, which allows service in any other manner. And having established that based on subsection D, the next question would be to look to what manners or how can a party serve process under Illinois law? And there's many different ways, and one of them has presided or set forth in the Illinois Code of Civil Procedure, section 2-206, expressly permits service by publication. And that's what was done here. Section 2-206 specifically and expressly allows service by publication on any action in Illinois that affects property. Here, there's no dispute that this isn't a foreclosure action that affects property located in Illinois. The section 2-206 also requires plaintiff to file an affidavit basically attesting that it tried to locate the defendant but could not. It is not disputed that plaintiff here filed an affidavit preserved by publication attesting to the fact that it tried to locate the defendant, conducted a due and diligent inquiry as to his whereabouts, and it could not locate the defendant. The reason for the certified publication statute is for this exact situation where a party cannot locate one for service purposes, conducts a reasonable due after a due and diligent inquiry, cannot locate him. It provides an alternative method of service under those circumstances. This is the exact reason why Section 2-206 exists and it was filed here. They don't dispute service. So if the court agrees that the act, the Illinois limited liability act, allows service by publication, then it turns to Section 2-206, I don't believe the defendant has set forth enough evidence to show that the plaintiff's inquiries to his whereabouts is not due and diligent. They submitted no counter affidavits. They didn't contest the affidavits filed by plaintiff. And one of the requirements when contesting service by publication is to submit a counter affidavit or at least establishing that upon due and diligent inquiry the defendant could have been found. Here, there is not presented or submitted nothing to suggest that defendant could have easily been located or could have been located upon due and diligent inquiry. It seems that defendant is trying to set the standard that when trying to serve in an LLC, a party must check 50 Secretary of State's websites to try to find where they're incorporated or how they're founded. I don't believe that is the type of duty that Section 2-206 is setting forth or that is developed in light of that statute when courts are considering whether a party conducted due and diligent inquiry. I believe that duty is going above and beyond what's required by the statute and what's required in the case law. In light of the fact that the Section 15-1505 sets forth the 60-day deadline, which is a strict deadline with no exceptions, in light of the fact that defendant did not file a motion in that deadline, we don't believe the court needs to get any further. I believe we win and it should affirm on that basis. But if the court does get into the second issue, we believe the express language of the LLC Act permits service by publication. Plaintiff has demonstrated in the record-maker that it complied with the service requirements to serve a defendant through publication. Defendant has set forth no evidence that either contradicts or rebutts the affidavits submitted by plaintiff regarding service by publication. So for those reasons, the court should affirm the affidavit. Thank you. Thank you, Mr. Kern. Rebuttal. The first is what the court was referring to earlier. It's that once a case is dismissed for warrant of prosecution, I do not anticipate or see how any other motion can be filed in that case except for a motion to vacate the dismissal for warrant of prosecution. There can be no motion for extension of time, no motion to quash, or any other motion except to vacate the dismissal. So therefore, there was no pending action at that time for defendant to have filed any motion because no case existed at that time. And in terms of 15-1505.6, we're not asking the court to carve out an exception from the statute. We're saying we agree with the dissent. All we're saying is that the plain language of the statute, when you combine that with the fundamental principles of fairness and common sense, it would dictate that you can only file a motion to quash or any other motion in a pending case. There was no pending action, and therefore, we're simply, we're not asking the court to carve out an exception from the statute. We're simply saying the statute anticipates that there must be a pending action for you to file such a motion in. In terms of the service by publication, plaintiff maintains that we are seeking to place a rather undue burden on plaintiffs by asking them to search a 50-second period. We are making no such request from plaintiffs that they do so. In fact, if they had done a simple search of the public records on LexisNexis or West Block, they would have found that the defendant was in fact a New Mexico company, and they would have possibly found the address of the registered agent. And the other issue, plaintiff did argue that defendant did not file a counter-act to challenge the plaintiff's application for service. In the first instance, it is the plaintiff's burden to prove that he has strictly complied with any sort of service by publication, and as the court has pointed out in other cases, that service by publication was basically unknown to the common law, and it is the least effective means of serving a defendant. And in most instances, it provides no notice at all to the defendant, which is why the case law surrounding service by publication overwhelmingly holds that the statute has to be strictly complied with. Now, producing an affidavit that basically says that you serve the Will County Telephone Directory, and you serve the Illinois Secretary of State's database to determine the whereabouts of the defendants, under no stretch of the imagination can that be considered to be due diligence or due inquiry to find the whereabouts of the defendant. So even if we were to even get there, if the courts were to find that service by publication was proper, the plaintiff's affidavit on its face is deficient because it is clear that the efforts to find the defendant were spurless, that the plaintiff did not conduct due and diligent inquiry as well as the circumstances permitted, which is what is required to enable a plaintiff's survey defendant by publication. So therefore, I ask that the court find that first and foremost, the defendant's motion to watch was timed and filed as it was filed within the 60 days after the case was reinstated, and also that either 1B and LLC may not be served by publication because there is no statute or section of the court of civil procedure that provides for such service, or if such service is proper that the plaintiff did not serve a statute for service by publication. Thank you, Justice, for your time. Thank you. Case number 121995, Bank of New York-Mellon, Virginia Pacific Realty, under advisement as agenda number 7. Ms. Shereves, Mr. Kern, we thank you for your arguments. At this time, you are excused.